IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**APRIL INGRAM**                                                                                               **PLAINTIFF**

v.                                         Case No. 4:22-cv-00142-KGB

**ARKANSAS DEPARTMENT OF
CORRECTIONS**                                                                                 **DEFENDANT**

## ORDER

Plaintiff April Ingram, brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); the Age Discrimination in Employment Act, as amended, ("ADEA"); 42 U.S.C. § 1981; and the Fourteenth Amendment to the United States Constitution for alleged unlawful employment practices based on her race, age, and for retaliation (Dkt. No. 1, at 1). Before the Court is the defendant Arkansas Department of Corrections' ("ADC") motion to dismiss (Dkt. No. 2). Plaintiff April Ingram filed a response and a corrected response to the ADC's motion to dismiss (Dkt. Nos. 6; 8). For the reasons explained below, the Court grants the ADC's motion to dismiss (Dkt. No. 2).

      **I.**      **Background**

At this stage of the litigation, the Court takes the facts as alleged in the complaint as true. Ms. Ingram is "an African American female citizen" previously employed as a Program Specialist at the ADC's Tucker Unit (Dkt. No. 1, ¶¶ 3-4). In her role as the Program Specialist over hobby crafts at the Tucker Unit, Ms. Ingram was responsible for the keys to the office doors in the hobby craft area as well as the money that was designated solely for hobby crafts (*Id.*, ¶ 6). An inmate at the Tucker Unit broke into the hobby craft office over a weekend when Ms. Ingram was not present (*Id.*, ¶ 7). On March 19, 2021, Lt. James McCalla, a Caucasian male, authorized Lt. York who was transferring from the Tucker Unit to leave her keys with Ms. Ingram (*Id.*, ¶ 9). Lt. McCalla

stated to Lt. York that he would send the key control person, Sgt. Berryhill, to pick up the keys, which Ms. Ingram contends Lt. McCalla knew or should have known was a violation of ADC policy (*Id.*, ¶ 9). On or about March 25, 2021, Ms. Ingram, after returning to work after the weekend, discovered that Lt. York's keys were missing from her office and the money that was in the lockbox was missing from her office. There was $359.00 of hobby craft funds missing (*Id.*, ¶ 10).

Ms. Ingram alleges that, as an African American and female "officer," she was subjected to a "stricter level of scrutiny" than her similarly situated male officers (*Id.*, ¶¶ 20-21). Additionally, she asserts that both African Americans and females were repeatedly reprimanded and disciplined for relatively minor mistakes while the same behavior from similarly situated white male employees was largely ignored even when discovered (*Id.*).

Ms. Ingram filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she was discriminated against on the basis of her race and sex (Dkt. No. 1, at 8). Ms. Ingram concedes that she did not exhaust her administrative remedies with the EEOC for her age discrimination and retaliation claims under Title VII (Dkt. Nos. 6, ¶ 3; 8, at 1). The EEOC issued her a Dismissal and Notice of Rights letter on November 15, 2021 (Dkt. No. 1, at 9).

Ms. Ingram filed her complaint with the Court on February 14, 2022 (Dkt. No. 1). Under Federal Rule of Civil Procedure 12(b)(6), the ADC moves to dismiss Ms. Ingram's claims (Dkt. Nos. 6; 8).

**II.     Standard of Review**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 657 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570) (2007); *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795 (8th Cir. 2021) (same).  A claim is facially plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 657.  This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Where a complaint pleads facts that are merely consistent with a defendant's liability, "it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  Specific facts are not required; the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  When ruling on a defendant's motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Id.* at 94; *see also Twombly*, 550 U.S. at 555-56.  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Legal conclusions "must be supported by factual allegations." *Id.* at 679.  Absent such support, the Court "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citations and internal quotations omitted).

At the pleading phase, a plaintiff need not plead facts establishing a *prima facie* case for a Title VII claim. *Warmington*, 998 F.3d at 796.  Since "the prima facie model is an evidentiary, not a pleading standard . . . there is no need to set forth a detailed evidentiary proffer in a complaint." *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)).  However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a

3

discrimination suit." *Id.* (quoting *Blomker*, 831 F.3d at 1056). The elements are "part of the background against which a plausibility determination should be made." *Id.* (quoting *Blomker*, 831 F.3d at 1056). Therefore, "[w]hile a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, *the complaint must include sufficient factual allegations to provide the grounds on which the claim rests*." *Blomker*, 831 F.3d at 1056 (quoting *Gregory*, 565 F.3d at 473) (emphasis in original).

### III.     Section 1981 Claims Against ADC

The Eleventh Amendment bars any suit against a state in federal court unless the state has consented to suit or Congress has unambiguously abrogated the state's Eleventh Amendment immunity. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54-56 (1996). The ADC is a state agency that is "the sole creation of the state" and has "no separate identity" from the state and cannot be stripped of its official character. *See Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir. 1988). The ADC has not consented to suit nor did Congress abrogate the states' Eleventh Amendment immunity by enacting § 1981. *Singletary v. Mo. Dep't of Corrs.*, 423 F.3d 886, 890 (8th Cir. 2005); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). For these reasons, Ms. Ingram's § 1981 claims against the ADC must be dismissed because the Eleventh Amendment bars suit against the agency itself for any kind of relief. *See Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

### IV.     Analysis Of Remaining Claims

The introduction to Ms. Ingram's complaint references claims based on the Age Discrimination in Employment Act ("ADEA") and retaliation under Title VII (Dkt. No. 1, at 1). Ms. Ingram makes no allegations in the complaint, however, to support either her ADEA or retaliation claims (Dkt. No. 1). Additionally, Ms. Ingram has not stated facts to support her ADEA

4

or retaliation claims in her complaint. Further, in her response to the ADC's motion to dismiss, Ms. Ingram concedes that she did not exhaust her administrative remedies with the EEOC with respect to her ADEA or retaliation claims under Title VII (Dkt. Nos. 6, ¶ 3; 8, at 1). Accordingly, the Court dismisses without prejudice Ms. Ingram's ADEA and retaliation claims under Title VII.

After reviewing all of the claims and allegations made in Ms. Ingram's complaint, the Court concludes that Ms. Ingram has failed to state adequately a claim upon which relief can be granted against the ADC for race and gender discrimination under Title VII. To establish a *prima facie* case of race and gender discrimination based on complaints of different treatment, Ms. Ingram must show that: (1) she belongs to a protected group; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012)).

In her complaint, Ms. Ingram plausibly pled that she belongs to a protected group and suffered an adverse employment action. *See id.* However, her factual allegations do not give rise to an inference that she met her employer's legitimate expectations or to an inference of discrimination.

Ms. Ingram states in her complaint that she was responsible for the keys to the office in the hobby craft area as well as the money that was designated solely for hobby crafts (Dkt. No. 1, ¶ 6). Ms. Ingram alleges that the ADC stated four reasons for her termination. The ADC terminated Ms. Ingram, in part, for an inmate breaking into the hobby crafts office and taking the hobby craft funds (*Id.*, ¶¶ 10, 15). The facts pled in the complaint do not give rise to an inference that Ms. Ingram was meeting her employer's legitimate expectations because Lt. York's keys and funds for which Ms. Ingram was responsible were stolen from the hobby crafts area.

Additionally, the circumstances pled in the complaint do not give rise to an inference of discrimination. Ms. Ingram's primary claim is that the ADC subjected her to a stricter level of scrutiny than her similarly situated white, male co-workers. The Court understands Ms. Ingram to support this claim by pointing to the conduct of three male officers that she asserts were not punished for conduct that Ms. Ingram perceives was similar to her conduct (Dkt. No. 1, ¶ 16). Notably, in her complaint Ms. Ingram only references the race of one officer, Lt. James McCalla. Of the examples she provides of employees to whom she was similarly situated but from whom she was treated differently, Ms. Ingram alleges only one instance where another employee's conduct constituted what she alleges was a violation of department policy. Specifically, Ms. Ingram asserts that Lt. McCalla, by authorizing Lt. York to leave her keys with Ms. Ingram, "knew or should have known was in violation of the policy of the Arkansas Department of Correction." (Dkt. No. 8, ¶ 9).

Ms. Ingram's allegation, however, does not support an inference of discrimination because her allegations that she and Lt. McCalla were similarly situated fall short. From the face of the complaint, the Court understands that Ms. Ingram was a Program Specialist while Lt. McCalla was a security officer with the ADC. There is no allegation that Ms. Ingram and Lt. McCalla shared a supervisor or would have been disciplined by the same individuals. *See Kight*, 494 F.3d at 734 ("To be able to introduce evidence comparing the plaintiff to other similarly situated employees in a discrimination case, the other employees must have been 'similarly situated to the plaintiff in all relevant respects.'") (citing *Forrest v. Craft Foods, Inc.*, 285 F.3d 688, 691-92 (8th Cir. 2002) (citations omitted). Even assuming that Lt. McCalla and Ms. Ingram are similarly situated in that they both violated ADC policy, the ADC found three additional reasons for Ms. Ingram's termination including unsatisfactory work performance resulting in injury and/or property damage,

6

falsification of written and/or verbal statements, and theft of property or mishandling of Agency funds or assets for personal gain (Dkt. No. 1, ¶ 15). Accordingly, the Court concludes that Ms. Ingram fails to allege sufficiently that she and Lt. McCalla were similarly situated. *See Kight v. Auto Zone, Inc.*, 494 F.3d 727, 734 (8th Cir. 2007) ("Employees are not similarly situated if they have engaged in differing degrees of misconduct.").

Ms. Ingram does not provide the race or gender of any of the other individuals identified in her complaint, apart from Lt. McCalla. According to the complaint, Lt. McCalla authorized Lt. York to leave her keys with Ms. Ingram, and Lt. McCalla stated to Lt. York that he would send Sgt. Berryhill, the "key control person" to come pick up the keys (Dkt. No. 1, ¶ 9). When Ms. Ingram returned to work after the weekend, Lt. York's keys were missing and $359.00 of hobby craft funds were missing (*Id.*). Nothing in these allegations supports the inference that the ADC scrutinized Ms. Ingram more severely than Lt. York or Sgt. Berryhill because of her race or gender for comparable conduct.

Ms. Ingram also alleges that both African Americans and females were repeatedly reprimanded and disciplined for minor mistakes while the same behavior from similarly situated white male employees was largely ignored (Dkt. No. 1, ¶ 20-21). Ms. Ingram does not provide any instances in her complaint where another similarly situated African American or female was held to a stricter standard than a similarly situated white, male employee. The lack of sufficient factual allegations renders Ms. Ingram's claims regarding the ADC's overall treatment of African Americans and females unsupported legal conclusions that the Court need not accept. *See Ashcroft*, 556 U.S. at 678.

Further, Ms. Ingram's assertion that the ADC took no disciplinary action against the male officers who failed to obtain a proper lock for the hobby craft doors does not support the inference

7

that she was scrutinized more severely than similarly situated white male officers (Dkt. No. 1, ¶ 16). Although Ms. Ingram is not required to present specific facts at this stage, her allegations fail to provide adequately the ground on which her claim rests. *See Blomker* 831 F.3d at 1056. Ms. Ingram does not state the race of the Tucker Unit Warden or Sgt. Berryhill. Further, Ms. Ingram does not allege that she is similarly situated to the Tucker Unit Warden or Sgt. Berryhill, who are security officers, whereas she is a Program Specialist. Ms. Ingram does not assert that either the Tucker Unit Warden or Sgt. Berryhill violated an ADC rule or policy, thereby warranting discipline, by not changing the lock on the hobby craft door. In fact, Ms. Ingram provides no prior incident that would put the Tucker Unit Warden or Sgt. Berryhill on notice that the lock on the hobby craft door was inadequate.

Similarly, Ms. Ingram's complaint does not indicate the race or gender of Officer Randy Moore. Ms. Ingram does not allege why the ADC should have disciplined Officer Randy Moore for lowering an inmate into a hole to retrieve the missing keys (Dkt. No. 1, ¶ 14). Ms. Ingram does not cite a rule or policy Officer Moore violated, nor does she contend that Officer Moore acted improperly in any manner. In her response to defendant's motion to dismiss, Ms. Ingram suggests[1] that she was improperly disciplined for causing injury to the inmate since Officer Moore was the individual who lowered the inmate into the hole (Dkt. No. 8, at 5).[2]

---

[1] Ms. Ingram's brief states: "[p]laintiff was allegedly disciplined for causing injury to the inmate that was lowered in the pipe chase, except that she did not lower the inmate down the pipe chase to retrieve the keys, but a male officer did engage in this conduct for which she was blame [*sic*]." (Dkt. No. 8, at 5).

[2] The wording in Ms. Ingram's complaint lists one of her reasons for termination as "unsatisfactory work performance *resulting* in injury and/or property damage" (Dkt. No. 1, ¶ 15) (emphasis added). Therefore, Ms. Ingram's factual allegations suggest that she was not disciplined for directly causing injury to the inmate, as her reply brief suggests, but that the consequences of Ms. Ingram's failure to secure her office and the items within it was part of ADC's reason for termination.

In summary, the ADC's stated reasons for Ms. Ingram's termination, as set forth in her complaint, included "violation of agency policies, unsatisfactory work performance resulting in injury and/or property damage; falsification of written and/or verbal statements; and theft of property or mishandling of Agency funds for assets for personal gain." (Dkt. No. 1, ¶ 15). Conversely, Ms. Ingram's factual allegations, taken as true, only support the inference that the ADC failed to punish one Caucasian officer, Lt. McCalla, who Ms. Ingram alleges was similarly situated in that he also allegedly violated an agency policy. The Court understands Ms. Ingram to assert that the incident was partially attributable to the actions, or lack thereof, of other officers, but in her complaint, Ms. Ingram did not provide the Court with the genders or races of the other officers for the Court to assess whether these officers are comparable for purposes of Title VII. Therefore, Ms. Ingram's factual allegations are insufficient to support an inference that the ADC discriminated against her based on her race or gender. While Ms. Ingram's allegations do not need to state a *prima facie* case for her Title VII claims, the Court may consider the elements for a *prima facie* case to make a plausibility determination. *See Warmington*, 998 F.3d at 796.

### V. Conclusion

The Court grants the ADC's motion to dismiss (Dkt. No. 2). Ms. Ingram's claims are dismissed (Dkt. No. 1).

It is so ordered this the 31st day of January, 2023.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge